206 N.J. Super. 186 (1985)
502 A.2d 48
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MICHAEL CATLOW, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 19, 1985.
Decided December 10, 1985.
*188 Before Judges ANTELL, SHEBELL and MUIR.
Andrew Dillmann, Assistant Deputy Public Defender, argued the cause for appellant (Thomas S. Smith, Jr., Acting Public Defender, attorney; Mr. Dillmann, of counsel and on the brief).
Mary Ellen Halloran, Deputy Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General, attorney; Ms. Halloran, of counsel and on the brief).
The opinion of the Court was delivered by SHEBELL, J.A.D.
Appellant Michael Catlow was indicted on charges of kidnapping (N.J.S.A. 2C:13-1b(1)), aggravated sexual assault (N.J.S.A. 2C:14-2a) and robbery (N.J.S.A. 2C:15-1). He was tried to a jury and found guilty on all counts. The court imposed concurrent 20 year terms with eight years of parole ineligibility on each of the first-degree convictions. Defendant appeals, alleging:
POINT I  THE FAILURE OF THE TRIAL COURT TO SUPPRESS THE TAINTED IDENTIFICATION TESTIMONY (IN-AND-OUT OF COURT) VIOLATED MICHAEL CATLOW'S DUE PROCESS RIGHT TO A RELIABLE CONVICTION, AS THE EVIDENCE ESTABLISHED THAT THE UNNECESSARILY SUGGESTIVE PROCEDURE PRODUCED IRREPARABLE MISIDENTIFICATION. (U.S. CONST. AMEND. XIV, N.J. CONST. ART. 1 PAR. 1).
A. The Identification Procedure Was Unnecessarily Suggestive And Conducive To Irreparable Misidentification.
B. The State Has Failed To Meet Its Burden Of Demonstrating The Absence Of Taint To The In-Court Identification.
POINT II  THE CUMULATIVE UNDULY PREJUDICIAL AND IRRELEVANT TESTIMONY ADMITTED AT THE TRIAL BELOW DEPRIVED MICHAEL CATLOW OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL. (U.S. CONST. 14 AMEND., N.J. CONST. ART. 1, PAR. 1).

*189 A. The Testimony Concerning The Death Of The Victim's Father Was Irrelevant And Unduly Prejudicial, Its Admission At Trial Is Reversible Error (Evid. R. 1(2), Evid.R. 4, Evid.R. 7).
B. The Introduction of Mr. McNeil's Hearsay Testimony That Michael Catlow Had Threatened Witnesses And Confessed To The Crimes Charged Is Reversible Error, As The Alleged Statements Did Not Demonstrate A Consciousness Of Guilt And Were Unduly Prejudicial (Evid.R. 8, Evid.R. 63, Evid.R. 63(10), Evid.R. 4).
C. The Evidence Of Other Crimes Introduced At Trial Denied Michael A. Catlow A Fair Trial. (Evid.R. 55).
POINT III  AS THE GRAND JURY FAILED TO INDICT MICHAEL CATLOW FOR FIRST DEGREE ROBBERY, THE TRIAL COURT'S SUBMISSION OF SUCH CHARGE TO THE JURY IS REVERSIBLE ERROR. (N.J. CONSTITUTION ART. 1, PAR. 8).
POINT IV  MICHAEL CATLOW WAS ENTITLED TO A JUDGMENT OF ACQUITTAL ON THE KIDNAPPING COUNT.
POINT V  THE TRIAL COURT'S FAILURE TO PROPERLY INSTRUCT THE JURY DENIED MICHAEL CATLOW HIS RIGHT TO A FAIR TRIAL (PARTIALLY RAISED BELOW).
A. The Failure To Charge The Lesser Included Offense Of Criminal Restraint.
B. The Erroneous First Degree Robbery Charge.
C. The Inadequate "Substantial Distance" Definition.
POINT VI  MICHAEL CATLOW WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.
POINT VII  THE CUMULATIVE EFFECT OF THE ERRORS BELOW WARRANTS REVERSAL OF MICHAEL CATLOW'S CONVICTIONS.
POINT VIII  THE SENTENCE IMPOSED BY THE TRIAL COURT IS MANIFESTLY EXCESSIVE.
On January 8, 1981 at about 11:30 p.m. the victim was attempting to free her car which was stuck on ice when a young man she later identified as the defendant offered to help. After the car was freed, he asked her for a ride and with her consent he climbed into the rear of the auto. As she drove he grabbed her around the neck and placed what she felt to be a knife at her throat. He ordered her to drive to an abandoned area and after taking her keys, money and jewelry, he had sexual intercourse with her.
The victim ran home and indicated she had been victimized, following which her father and a neighbor, who was the chief of police, and also her husband ran to pursue the perpetrator. Her husband encountered a person he later identified as the *190 defendant standing on a nearby porch. As the two were exchanging words the victim's father and the neighbor approached. However, the father collapsed and later died of a heart attack. Because of this no further pursuit was made of the suspect.
The victim had been having an affair and had relations with her lover earlier that same evening. Evidence of this involvement surfaced when results of rape kit tests taken at the hospital on the evening of the attack became available.
The first photographic lineup viewed by the victim did not contain defendant's photograph because the descriptions given were of a male of shorter stature than defendant's six foot one height. The victim's younger brother having heard the descriptions given said there was a person "hanging around" the neighborhood by the name of Catlow who fit the description. Officers obtained a photograph of defendant and presented two photographic lineups to the victim and her husband, one of which included the defendant's photograph. The victim picked defendant's photo and indicated she was 90 percent certain but would not make a positive identification.
Thereafter, defendant's clothes were obtained and shown to the victim and her husband. The victim again viewed more photographs and picked defendant's picture, saying she was now 99 percent certain but was again unwilling to state that he definitely was her assailant. Defendant's photograph showed him wearing the hooded sweatshirt the victim had been shown by the police. The victim's husband also chose defendant's photograph from the array. Defendant was arrested after his fingerprint was found on the window of the victim's car.
A few days thereafter the victim and her husband again were shown defendant's clothes, after which the victim gave a positive identification of defendant as the rapist and her husband identified him as the man he had seen on the nearby porch.
At trial, the State called a woman from the victim's neighborhood with whom defendant stayed. She testified defendant *191 returned to her apartment in the early morning hours on the night of the attack and was wearing the clothes identified by the victim as those worn by her perpetrator. She testified he placed $15 on the table claiming he had "mugged a queer" that night. She also stated he asked her the next day if the police had been looking for someone wearing those clothes. He then washed, dried and put away the clothes.
A co-inmate of Catlow during his stay in the county jail testified defendant told him he had "raped a lady inside a car" and then disposed of his clothes. He said defendant asked him to try to keep certain persons out of court by doing whatever was necessary.
Defendant denied committing any of the crimes charged and offered an alibi which was corroborated by his girlfriend and her mother. It was argued that he had a disabling knee injury which would have prevented him from traveling from his girlfriend's house to the scene of the crime in the time available.
Defendant asserts the identification procedures were unnecessarily suggestive, conducive to irreparable misidentification and that the State failed to demonstrate the absence of taint in the in-court identification. He points particularly to what he asserts was the inability of the victim and her husband to positively identify him until they saw the seized clothing and color photographs of him wearing that clothing.
If the identification procedure is "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law," relief must be granted. Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967). The evidence as a whole must be viewed in the totality of the circumstances in making this due process analysis. Ibid; Simmons v. United States, 390 U.S. 377, 383, 88 S.Ct. 967, 970, 19 L.Ed.2d 1247, 1252-1253 (1968); State v. Matlack, 49 N.J. 491, 498 (1967), cert. den. 389 U.S. 1009, 88 S.Ct. 572, 19 L.Ed.2d 606 (1967).
*192 A reviewing court must decide whether, viewing the evidence as a whole, the trial judge could reasonably have concluded that the procedure was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. State v. Ford, 165 N.J. Super. 249, 254 (App.Div. 1978) (Michels, J.A.D., dissenting), rev'd on dissent 79 N.J. 136 (1979). The determination of the trial court must be given considerable weight. Id.; State v. Farrow, 61 N.J. 434, 451 (1972), cert. den. 410 U.S. 937, 93 S.Ct. 1396, 35 L.Ed.2d 602 (1973).
We are satisfied that the motion judge correctly explored the necessary issues and elements surrounding the reliability of the identification in the totality of the circumstances. Manson v. Braithwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154, (1977). Any suggestiveness with respect to the identification procedures employed was not such as to give rise to a "very substantial likelihood of irreparable misidentification" and did not violate defendant's right to due process. Id., at 116, 97 S.Ct. at 2243, 53 L.Ed.2d at 155; Simmons, supra, 390 U.S. at 384, 88 S.Ct. at 967, 19 L.Ed. at 1253. The various issues raised by defendant concerning the identification procedures and also the effect on the in-court identification were presented to the jury for their consideration and evaluation. We find no reversible error on this issue.
Defendant claims he was unduly prejudiced by the admission of certain testimony which should have been excluded under Evid.R. 4 because its probative value was outweighed by its prejudicial effect. He asserts these errors rise to the level of State and Federal constitutional violations.
Prior to the commencement of trial the court considered the State's request to permit evidence of the death of the victim's father as relevant on the questions of why the victim did not come immediately to the police and why her husband did not further confront the man he had observed. The court considered the evidence to be relevant and concluded that *193 adequate measures could be taken to minimize any prejudice inherent in such evidence.
Evidence is relevant if it has a tendency to render a desired inference more probable than it would not be without the evidence. N.J.S.A. 2A:84A-3; Evid.R. 1(2); State v. Cavallo, 88 N.J. 508, 515 (1982). When it has been determined that there is logical relevancy between the evidence offered and a material issue in the case, the admissiblity of such evidence falls largely within the discretion of the trial judge. United States v. Steele, 685 F.2d 793, 808 (3d Cir.1982), cert. den. Mothon v. U.S., 459 U.S. 908, 103 S.Ct. 213, 74 L.Ed.2d 170 (1982) and Twombly, Inc. v. U.S., 459 U.S. 908, 103 S.Ct. 213, 74 L.Ed.2d 170 (1982).
We are satisfied the trial court's determination that the evidence was relevant was a proper determination in the circumstances presented. State v. Wilbely, 112 N.J. Super. 216 (App.Div. 1970). Further, the court gave a specific limiting instruction which properly cautioned the jury against using such evidence for any improper purposes. Id., at 219-220. The record reveals no reason to believe that the jury was unable to follow the court's sharp and complete curative instruction. State v. Winter, 96 N.J. 640, 648-651 (1984); State v. Manley, 54 N.J. 259, 270 (1969); State v. Witte, 13 N.J. 598, 611 (1953), cert. den. 347 U.S. 951, 74 S.Ct. 675, 98 L.Ed.2d 1097 (1954).
Defendant also claims the court erred in permitting his cellmate's testimony of alleged statements and requests attributed to defendant. The testimony was clearly admissible under Evid.R. 63(7) and (10). See State v. Rechtschaffer, 70 N.J. 395, 413-414 (1976); State v. Jackson, 182 N.J. Super. 98, 101 (App. Div. 1981); State v. Moore, 147 N.J. Super. 47, 50-51 (App.Div. 1977).
Defendant also contends that testimony that he "raped a lady in a car" and "mugged a queer" was inadmissible under Evid.R. 55 as it was prohibited evidence of "other crimes." There is no merit to this contention. The testimony was offered *194 as direct evidence of defendant's guilt of the crime with which he was charged and is not barred under Evid.R. 55. New Jersey Rules of Evidence (Anno. 1985), Comment 3 to Evid.R. 55.
The trial court denied defendant's request that it not charge the jury on first-degree robbery. Defendant maintains the indictment did not allege first-degree robbery and did not set forth facts from which one could reasonably conclude that a first degree robbery was being charged. He asserts the submission of the first degree robbery jury charge was in violation of his right to be charged by indictment or presentment under the New Jersey Constitution. N.J. Const. (1947), Article 1, ¶ 8. We agree.
Count three of the indictment states defendant "did threaten bodily injury upon [victim], in the course of committing a theft, contrary to the provisions of N.J.S. 2C:15-1." N.J.S.A. 2C:15-1b states:
Grading. Robbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon.
An indictment must serve as notice to the accused of the charge against him and must apprise him sufficiently so that he may prepare an adequate defense. State v. Wein, 80 N.J. 491, 497 (1979). In our view an accused reading the indictment in question would not be put on notice that he was charged with more than a second-degree crime. The State takes the position that under State v. Talley, 94 N.J. 385 (1983) and Bibby v. Tard, 741 F.2d 26 (3d Cir.1984) there can be no challenge because the defendant should have been aware of the victim's assertions that a knife was used in the incident as her grand jury testimony was available through discovery and therefore there was no unfair surprise.
The State's position overlooks the basic issue of whether or not defendant's State constitutional right to indictment or presentment was violated. We conclude that the indictment is *195 inadequate. In the absence of the inclusion of either facts or statutory language constituting a first-degree robbery, there can be no determination by a reviewing court as to whether or not the grand jury, although hearing sufficient evidence to constitute a first-degree robbery, accepted or rejected such evidence. The indictment in question does not demonstrate a grand jury determination that it was satisfied that a first-degree crime had occurred.
We consider determination of the degree of a crime to be an essential element of the grand jury function. Failure of an indictment to demonstrate this function has been carried out, not unlike the failure to include a necessary element of an offense, constitutes a denial of defendant's rights. Cf. State v. Gibbs, 134 N.J.L. 366, 370 (Sup.Ct. 1946). The State's reference to the distinction between first and second-degree robbery as being merely one of grading is to our view unrealistic in light of the importance of such distinction to a defendant. This distinction may be of far greater consequence to an accused than the obtaining of an acquittal on a crime of a lesser degree. See State v. Federico, 198 N.J. Super. 120, 128-129 (App.Div. 1984).
We have carefully considered defendant's contentions as set forth in Points IV, V, VI and VII of his brief and find them to be clearly without merit. R. 2:11-3(e)(2).
Defendant maintains that the aggregate 20 year imprisonment with eight years of parole disqualification imposed by the sentencing judge should be modified by this court in the interest of justice citing State v. Bess, 53 N.J. 10 (1968). The judicial power to modify sentences should not be exercised unless the application of the facts to the law is such a clear error of judgment that it shocks the judicial conscience. State v. Roth, 95 N.J. 334, 364 (1984). We find no abuse of discretion in the sentences imposed. Id.; State v. Butler, 89 N.J. 220, 232 (1982).
We set aside defendant's conviction for first degree robbery and direct that the trial court amend the judgment and resentence *196 defendant for the crime of second degree robbery. We affirm defendant's convictions and sentences for kidnapping and aggravated sexual assault.